UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHN CHEW, | Civ. No. 23-22676 (RK)(JBD) |
| Plaintiff, | **MEMORANDUM ORDER** |
| v. | |
| STATE OF NEW JERSEY, *et al.*, | |
| Defendants. | |

This matter comes before the Court by way of a motion filed by plaintiff John Chew for the appointment of *pro bono* counsel for all purposes pursuant to 28 U.S.C. § 1915(e)(1).  [Dkt. 45.]  Defendants New Jersey State Correctional System and the State of New Jersey (collectively, the "State Defendants") oppose the motion. [Dkt. 49.]  For the reasons set forth below, Chew's motion is denied without prejudice.

## I.    BACKGROUND

The Court writes for the parties and therefore assumes familiarity with the case.  Because the Court discussed the background and procedural history of this action in its prior Orders regarding the appointment of *pro bono* counsel, [Dkts. 9, 15], the Court does not repeat it here and provides only supplemental background information necessary to resolve the present motion.

On August 28, 2025, the Court granted Chew's application to proceed *in forma pauperis* and *sua sponte* appointed him *pro bono* counsel for the limited purpose of effecting service on defendants.  [Dkt. 15.]  The Court appointed Anthony

R. Cambria, Esq., as *pro bono* counsel on September 17, 2025.  [Dkt. 16.]

By February 3, 2026, Chew, with the assistance of counsel, successfully served each

named defendant.  [Dkts. 21, 22]; [Dkt. 43] at 10.  Following service, counsel for

several defendants entered appearances in the case and filed—or indicated an

intention to file—motions to dismiss Chew's complaint.  *See* [Dkts. 23, 25-29.]

Shortly thereafter, Mr. Cambria filed a letter indicating that he had fulfilled

the limited purpose of his appointment by effecting service and requested that he be

relieved as *pro bono* counsel for Chew.  [Dkt. 32.]  In response to Mr. Cambria's

letter, the Court entered a text order stating that it was "satisfied that counsel [ ]

effectively discharged his limited appointment task of effecting service" and

concluded that no further action was required by Mr. Cambria at that time.

[Dkt. 35.]  In light of the pending and forthcoming motions to dismiss, however, the

Court held in abeyance counsel's request to be fully relieved of his *pro bono* duties

"pending resolution of [those motions]."  *Id.*

At this time, five motions to dismiss are currently pending in this action.

[Dkts. 38, 40, 42-44.]  The State Defendants seek to dismiss this case on several

grounds:  (1) Eleventh Amendment sovereign immunity; (2) *Rooker-Feldman*

doctrine; (3) immunity under the New Jersey Tort Claims Act ("NJTCA"); and

(4) plaintiff's failure to identify an applicable standard of care in his medical

malpractice claim.  [Dkts. 38, 46.]  Dr. Samir Patel seeks to dismiss on the grounds

that Chew improperly sued him and that Chew's claims are barred by both res

judicata and the statute of limitations.  [Dkt. 40.]  St. Francis Medical Center seeks

2

to dismiss this case based on res judicata, insufficient service of process, and lack of subject matter jurisdiction. [Dkt. 42.] University Hospital seeks dismissal based on (1) Chew's failure to state a cognizable claim of relief against it; (2) untimely service; (3) statute of limitations grounds; (4) lack of subject matter jurisdiction; and (5) res judicata. [Dkt. 43.] Finally, Dr. Hitesh K. Patel seeks dismissal on multiple grounds, including the applicable statute of limitations, failure to state any claim for relief, lack of subject matter jurisdiction, untimely service of process, and res judicata. [Dkt. 44.]

On April 1, 2026, instead of filing an opposition to the motions to dismiss, Chew filed the motion for the appointment of *pro bono* counsel for all purposes presently before the Court. [Dkt. 45.] The State Defendants oppose the motion, arguing that Chew's claims do not have merit in fact or law, and that the six factors set forth in *Tabron v. Grace*, 6 F.3d 147 (3d Cir. 1993) (the "*Tabron* factors") weigh against the appointment of counsel in this case. [Dkt. 49.]

## II.    LEGAL STANDARDS

While there is no constitutional right to counsel for civil litigants, 28 U.S.C. § 1915(e)(1) permits the Court to "request an attorney to represent any person unable to afford counsel." Appointment of counsel may be made by the Court *sua sponte* at any point in the litigation. *See Tabron*, 6 F.3d at 156 (citations omitted). Moreover, the appointment of *pro bono* counsel need not be for the duration of the litigation; rather, it may be for limited or particular purposes. *See, e.g., Bell v. Pleasantville Hous. Auth.*, Civ. No. 09-4614 (JS), 2012 WL 12978443

(D.N.J. Jan. 18, 2012) (appointing pro bono counsel for the limited purpose of defending plaintiff at his deposition); *Henry v. Reynolds*, Civ. No. 22-5802 (RMB), 2025 WL 1703246, at *2 (D.N.J. June 18, 2025) (noting that the Court had previously granted plaintiff's motion for *pro bono* counsel "for the limited purpose of effecting personal service of process upon all [d]efendants and denied with respect to representation beyond service of process").

In determining whether to appoint counsel, the Court must consider, as a threshold matter, whether the "plaintiff's claim has arguable merit in fact and law." *Tabron*, 6 F.3d at 155. If the Court determines that the case has arguable merit, it then must consider the *Tabron* factors to determine whether appointment of *pro bono* counsel is appropriate. *Id.*; *see also Parham v. Johnson*, 126 F.3d 454, 457 (3d Cir. 1997). The *Tabron* factors are: (1) the ability of the plaintiff "to present his or her case," and, where the plaintiff is a prisoner, the "restraints placed upon him or her by confinement"; (2) the difficulty and complexity of the legal issues in the matter; (3) the amount of factual investigation required and the plaintiff's ability to pursue that factual investigation, and whether the claims will require extensive discovery and compliance with complex discovery rules; (4) whether the issues will rely heavily on testimony and thus turn on credibility determinations; (5) whether expert witness testimony will be required; and (6) whether the plaintiff can attain and afford to retain counsel. *Tabron*, 6 F.3d at 155-56; *Parham*, 126 F.3d at 457-58. None of these factors "are individually determinative and the list is not exhaustive."

4

*Burt v. Hicks*, Civ. No. 20-19459 (SAK), 2021 WL 3207729, at *2 (D.N.J. July 29, 2021) (citing *Parham*, 126 F.3d at 458).

Indeed, the Court must weigh these and any other relevant factors against the extreme value of a *pro bono* lawyer's time, ever mindful that "[v]olunteer lawyer time is a precious commodity . . . . Because this resource is available in only limited quantity, every assignment of a volunteer lawyer to an undeserving client deprives society of a volunteer lawyer available for a deserving cause. We cannot afford that waste." *Tabron*, 6 F.3d at 157 (second alteration in original) (quoting *Cooper v. A. Sargenti Co.*, 877 F.2d 170, 172 (2d Cir. 1989)). Thus, the decision to appoint counsel is ultimately "a matter of discretion . . . and the determination must be made on a case-by-case basis." *Id.* at 157-58 (citations omitted).

## III.    DISCUSSION

For the reasons set forth below, the Court declines to appoint *pro bono* counsel for Chew at this time, and his motion will be denied without prejudice.

As an initial matter, the Court notes that Chew's complaint survived screening, [Dkt. 8] at 1 n.1, and therefore, for purposes of the *Tabron* analysis, the Court will assume that the complaint has arguable merit in fact and law. *See, e.g.*, *Harris v. Drs. at the Newark Univ. Hosp.*, Civ. No. 25-3063 (MAH), 2026 WL 248134, at *2 (D.N.J. Jan. 29, 2026) (finding that the plaintiff's claims had some arguable merit in fact and law because the Court allowed those claims to proceed after screening the complaint). That said, the screening order in this particular case included only a summary analysis, in which the Court emphasized that Chew

had "already litigated the same claims to a final judgment in state court" and that the complaint "may be subject to dismissal for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) or as time barred under Fed. R. Civ. P. 12(b)(6)." [Dkt. 8] at 1, n.1. Moreover, there are currently five pending motions to dismiss Chew's complaint, most of which raise the same (and additional) bases for dismissal that the Court identified in its initial screening order. [Dkts. 38, 40, 42-44.] These issues call into serious question whether Chew's case has arguable merit, and the Court has its doubts. As discussed below, these doubts factor into the Court's ultimate decision not to appoint counsel.

Nonetheless, however, the complaint passed the screening process and the Court will therefore proceed to an analysis of the *Tabron* factors. *See Pellecchia v. Princeton Univ. Bd. of Trs.*, Civ. No. 23-21828 (JBD), 2024 WL 3444125, at *2 (D.N.J. July 16, 2024) (finding that the merits of plaintiff's claims would be addressed by deciding defendant's pending motion to dismiss, and proceeding directly to *Tabron* factor analysis); *Johnson v. Feigley*, Civ. No. 20-20358 (JBD), 2024 WL 1051999, at *3 (D.N.J. Mar. 8, 2024) (highlighting significant issues with the merits of the plaintiff's complaint but nonetheless proceeding to the *Tabron* factor analysis given the pending motion to dismiss).

Regarding the first factor, Chew's ability to present his case, the Court must "consider the plaintiff's education, literacy, prior work experience, and prior litigation experience," as well as whether the plaintiff is able to understand English. *Tabron*, 6 F.3d at 156. Where, as here, the plaintiff is incarcerated, the Court

should also consider the restraints placed on him by his imprisonment, as well as whether the plaintiff has access to necessary resources like a typewriter, photocopier, telephone, and computer. *Hicks*, 2021 WL 3207729, at *2 (citing *Montgomery v. Pinchak*, 294 F.3d 492, 498 (3d Cir. 2002); *Parham*, 126 F.3d at 459). Chew argues that he will have significant difficulty in advancing his case because he is legally blind (among other ailments) and unable to read or write documents without assistance due to his disability. [Dkt. 45] at 2. Chew also asserts that he needs counsel because he has limited education and is not familiar with the law. *Id.* at 3. The Court finds that Chew's blindness will impair his ability to prosecute his case and accordingly concludes that the first *Tabron* factor weighs in favor of appointing counsel.

The second *Tabron* factor requires the Court to consider "the difficulty of the particular legal issues," especially where the law is not clear. *Tabron*, 6 F.3d at 156. Under this factor, courts also consider the "proof going towards the ultimate issue and the discovery issues involved." *Parham*, 126 F.3d at 459. Here, Chew brings claims for medical malpractice, deliberate indifference, and negligence. Although the Third Circuit has held that deliberate indifference and medical malpractice claims are often sufficiently complex to warrant the appointment of counsel, *see Montgomery*, 294 F.3d at 502 (citation omitted); *Parham*, 126 F.3d at 459), "it is too early in th[is] litigation to determine whether [the legal issues here] . . . are sufficiently complex to warrant the appointment of *pro bono* counsel." *Pellecchia*, 2024 WL 3444125, at *2 (citing *Jenkins v. D'Amico*, Civ. No. 06-2027

7

(JAP), 2006 WL 2465414, at *1-2 (D.N.J. Aug. 22, 2006) (noting that "the factual and legal issues 'have not been tested or developed by the general course of litigation, making [a number of factors] . . . particularly difficult to evaluate,'" and concluding that the plaintiffs failed to demonstrate the complexity of legal issues, or most of the other *Tabron* factors, at that early stage of the proceedings) (first alteration in original) (quotation omitted)).  Accordingly, the Court finds that the second *Tabron* factor weighs against the appointment of *pro bono* counsel at this time.[1]

The third *Tabron* factor directs courts to assess the degree to which factual investigation will be necessary and the ability of the plaintiff to pursue such investigation.  *Tabron*, 6. F3d at 156.  Here, it is not clear at this early stage what and how much factual investigation will be necessary because discovery has not yet begun.  Given the pending motions to dismiss, it is also not clear which claims, if any, will even proceed to the discovery phase at all.  *See Wagner v. Mifflin Cnty. Pennsylvania*, Civ. No. 23-0100, 2024 WL 6975684, at *3 (M.D. Pa. Oct. 8, 2024).  However, Chew's blindness may severely inhibit his efforts to conduct any such investigations, regardless of their scope.  Accordingly, the Court concludes that the third *Tabron* factor weighs slightly in favor of appointing counsel.

---

[1] As noted, cases involving medical malpractice are, generally, sufficiently complex under the second *Tabron* factor to weigh in favor of appointment. *See, e.g., Caratini v. Powell*, Civ. No. 20-8924 (MJS), 2023 WL 2344990, at *4 (D.N.J. Mar. 3, 2023) (citations omitted).  Should any of Chew's claims survive the pending motions to dismiss, reassessment of the second *Tabron* factor may be appropriate.

For the fourth factor, courts must consider whether the case is "solely a swearing contest." *Parham*, 126 F.3d at 460. Here, it is too early to determine whether, and to what extent, the case will turn on credibility determinations. Accordingly, the fourth *Tabron* factor weighs against appointing counsel at this time. *See Johnson*, 2024 WL 1051999, at *5 (citations omitted).

Regarding the fifth factor, whether expert testimony will be needed, the Court is unable to determine the necessity of experts at this time. Here, Chew argues that he "cannot schedule or obtain the examination of a third[-]party medical doctor to support his position because of his blindness and incarceration," but does not otherwise address the issue of expert testimony in his motion. [Dkt. 45] at 2. Although Eighth Amendment deliberate indifference and medical malpractice claims generally require expert discovery, *Pajo v. Agri-Indus.*, Civ. No. 21-10423 (EAP), 2023 WL 4407678, at *4 (D.N.J. July 7, 2023) (citing *Colston v. Corr. Med. Servs.*, 256 F. App'x 551, 553 (3d Cir. 2007) (not precedential) (further citations omitted)); *Parham*, 126 F.3d at 460, it is too early in the litigation for the Court to determine the contours of what expert testimony (if any) will be required on his claims here. In any event, it appears that expert testimony is not necessary at this stage to resolve the pending motions to dismiss. Accordingly, this factor points against the appointment of counsel at this time.

Finally, the sixth *Tabron* factor requires the Court to consider the "plaintiff's financial ability to attain and afford counsel on his own behalf." *Jones v. United States*, Civ. No. 14-139 (NLH), 2015 WL 7432349, at *4 (D.N.J. Nov. 23, 2015)

9

(citing *Parham*, 126 F.3d at 461). In his motion, Chew asserts that he "has tried many times to obtain counsel but does not have the financial ability" to do so, and "has been turned down by numerous attorneys and cannot find an attorney to represent him *[p]ro [b]ono*." [Dkt. 45] at 4. Further, this Court has already granted leave for Chew's case to proceed *in forma pauperis*, indicating that he likely cannot afford a lawyer. [Dkt. 15.] The Court thus concludes that the sixth *Tabron* factor weighs in favor of appointing *pro bono* counsel.

Balancing the *Tabron* factors together, three weigh in favor of appointing *pro bono* counsel and the remaining three weigh against appointment. As noted, the list of *Tabron* factors "is not exhaustive," *Hicks*, 2021 WL 3207729, at *2 (citing *Parham*, 126 F.3d at 458), and when faced with a tie, courts often consider other factors in making their ultimate determination on whether to appoint *pro bono* counsel. *See, e.g., Bayete v. Michelle Ricci*, Civ. No. 08-3941 (GEB), 2011 WL 63604, at *12 (D.N.J. Jan. 7, 2011) (highlighting factors such as "the lack of funding to pay appointed counsel, the limited supply of competent lawyers willing to do *pro bono* work, and the value of lawyers' time" in deciding to not appoint *pro bono* counsel when there was an inconclusive *Tabron* result); *Davidson v. Tan*, Civ. No. 08-2679 (GEB), 2010 WL 5466285, at *4 (D.N.J. Dec. 30, 2010) (highlighting similar factors in denying motion to appoint *pro bono* counsel when there was an inconclusive *Tabron* result). For several reasons, the Court concludes that, on balance, appointment of counsel is not warranted at this time.

10

First, the Court takes account of the limited supply of *pro bono* lawyers and the value of their time, *see Tabron*, 6 F.3d at 157, and notes that it cannot appoint counsel for every *pro se* litigant who requests representation. Second, this case is still in its very early stages. Following resolution of the motions to dismiss, aspects of this case relevant to the *Tabron* analysis may materially change, and the Court will have a better sense whether appointment of counsel is necessary for all purposes. Third, while the Court appreciates the limitations on Chew's ability to litigate his case given his blindness and other health issues, it is apparent that he is receiving some kind of assistance with this case by a fellow inmate and has successfully drafted and filed the complaint and the present motion with that assistance. *See* [Dkt. 1] at 6; [Dkt. 45] at 2. Notwithstanding Chew's assertion that he "cannot himself read [the motions to dismiss] or respond to them because of his blindness, age[,] and illness," [Dkt. 45] at 3, the assistance that he has received thus far seems to mitigate the immediate need for the appointment of *pro bono* counsel, and the Court is confident Chew can respond to the pending motions to dismiss with that same assistance. Finally, the Court's serious reservations about the merits of Chew's claims—raised in defendants' motions to dismiss and as discussed above—weigh significantly against appointing *pro bono* counsel at this time.

The Court will thus deny Chew's motion to appoint *pro bono* counsel for all purposes without prejudice.[2] The Court notes, however, that *pro bono* counsel may

---

[2] Although the Court previously appointed *pro bono* counsel for Chew, it did so for the strictly limited purpose of effecting service. [Dkt. 15.] For the reasons expressed above, the Court denies Chew's request for appointed counsel for all

11

be appointed at any stage of the litigation.  *See Tabron*, 6 F.3d at 156 (citation omitted).  Should his complaint survive defendants' motions to dismiss, Chew may reapply for the appointment of *pro bono* counsel.

## IV.   CONCLUSION

For the reasons stated,

**IT IS** on this **1st** day of **July, 2026**,

**ORDERED** that Chew's motion for the appointment of *pro bono* counsel for all purposes [Dkt. 45] is DENIED without prejudice; and it is further

**ORDERED** that Chew may file any oppositions to defendants' pending motions to dismiss no later than **August 17, 2026**; and it is further

**ORDERED** that defendants may file any replies in support of their respective motions to dismiss no later than **August 31, 2026**; and it is further

**ORDERED** that the Clerk shall mail a copy of this Order to Chew at the address on file.

_____
J. BRENDAN DAY
UNITED STATES MAGISTRATE JUDGE

---

purposes.  *See, e.g.*, *Lurch v. Cnty. of Atl.*, Civ. No. 21-20589 (EAP), 2024 WL 3509449, at \*2, 4 (D.N.J. July 23, 2024) (denying plaintiff's motion for *pro bono* counsel, after having already made a limited appointment of counsel for the purpose of serving plaintiff's complaint, because a majority of *Tabron* factors weighed against granting the motion).