**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JOHN CHEW,<br><br>Plaintiff,<br><br>v.<br><br>STATE OF NEW JERSEY, et al.,<br><br>Defendants. | Civil Action No. 23-22676 (RK) (JBD)<br><br>**MEMORANDUM OPINION** |

**KIRSCH, District Judge**

**THIS MATTER** comes before the Court upon five Motions to Dismiss filed by the State of New Jersey and the New Jersey Department of Corrections ("NJDOC") (incorrectly pled as "New Jersey State Correctional System") (collectively, the "State Defendants"), ("State Defs. Mot.," ECF No. 38), Dr. Samir Patel, ("S. Patel Mot.," ECF No. 40), St. Francis Medical Center, (ECF No. 42), University Hospital, ("Univ. Hospital Mot.," ECF No. 43), and Dr. Hitesh Patel, (ECF No. 44) (collectively, "Defendants"). Plaintiff John Chew ("Plaintiff") did not oppose any of the five Motions to Dismiss, despite being provided opportunity to do so. The Court has considered the parties' submissions and resolves the matter without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, Defendants' Motions to Dismiss are **GRANTED**.

## I. BACKGROUND[1]

Plaintiff, who is proceeding *pro se*, appears to pursue both constitutional claims under 42 U.S.C. § 1983 and tort claims under New Jersey state law.[2] Plaintiff's Complaint ("Compl.," ECF No. 1), which is styled as a letter directed to the Clerk of this Court, challenges the "DISMISSAL OF APPEAL WITHOUT REVIEW BY STATE APPELLATE COURT" and "SEEK[S] FAIR REVIEW FROM THE FEDERAL DISTRICT COURT." (*Id*. at 3.)[3] Plaintiff, who is currently in the custody of the NJDOC, claims that he was made "legally blind" by "Medical Malpractice, Deliberate Indifference and Negligence from the medical authorities here at the New Jersey State Prison and other medical officials working with them." (*Id*.) He alleges that he filed a tort claim in state court while represented by counsel. (*Id*.) He claims that his attorney was "less than honest" and "appears to have been bribed to intentionally lose the case." (*Id*.) Plaintiff asserts that the "TRIAL COURT REFUSED" to review his motion to remove his attorney and that his case was subsequently "dismissed with prejudice." (*Id*. at 4.)[4] Plaintiff alleges that he appealed this "unlawful" dismissal, but the "Appellate Court made it very difficult to file [his] appeal and used many underhanded tactics to waste [his] time and energy and discourage [him] from pursuing the

---

[1] The facts set forth in this Memorandum Opinion are taken as true directly from the Complaint for the sole purpose of deciding Defendants' pending Motions. *See Phillips v. County of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).

[2] Plaintiff also raises the possibility that his claims arise under federal habeas law. However, for a state prisoner like Plaintiff to pursue habeas claims in federal court, his petition would be subject to various exhaustion requirements, none of which he has seemingly satisfied. *See Vasquez v. Strada*, 684 F.3d 431, 433 (3d Cir. 2012) (stating that prior to filing a habeas petition under 28 U.S.C. § 2241, a petitioner must exhaust his administrative remedies); *see also Bridges v. Sec'y of Pa. Dep't of Corr.*, 706 F. App'x 75, 81 (3d Cir. 2017) ("A habeas petitioner is required by statute to exhaust his state court remedies before pursuing federal habeas relief." (citing 28 U.S.C. § 2254(b)(1))). Thus, the Court construes this matter as a § 1983 action.

[3] Based on the multiple documents of which Plaintiff's Complaint is seemingly comprised, the Court refers to the page numbers designated by this Court's electronic filing system for ease of reference.

[4] The Court takes judicial notice of all filings in *Chew v. State of New Jersey*, No. MER-L-000918-18 (N.J. Super. Ct. Apr. 30, 2018), as they are a matter of public record. *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

case." (*Id.*) Plaintiff asserts that the Appellate Court dismissed his appeal "without review" on October 17, 2023, claiming that he did not file a timely brief. (*Id.*) Plaintiff claims that the "NJ Appellate Court is extremely HOSTILE to [his] rights and refuses to follow DUE PROCESS" or "allow [him] ACCESS TO THE COURTS, EQUAL PROTECTION OF THE LAWS[,] or FUNDAMENTAL FAIRNESS." (*Id.*) Plaintiff alleges that the state courts are "corrupt and WILL NEVER rule against ANY State Actor and would rather have [him] suffer and be blind with NO RESPITE OR RESTITUTION than admit that State Actors are responsible for harming [him]." (*Id.*) Plaintiff claims that his "only hope to prosecute" his state case "with any fairness is to move it to the Federal District Court." (*Id.*)

Plaintiff provides the Court with a brief synopsis of his state case. He alleges that, in 2008, he had "some problems" with his "carotid arteries in his neck and head" and underwent an MRI. (*Id.* at 7.) He asserts that the results of the MRI revealed an "anomaly," but he did not receive any follow-up testing to determine the cause of that anomaly. (*Id.*) Plaintiff claims that, in 2013, his vision began to "drastically" deteriorate and that "Dr. Bucchino" did "nothing to try to determine the cause of Mr. Chew's vision problems." (*Id.*) Plaintiff alleges that, in 2016, he was referred to "Dr. Patel," who determined that Plaintiff's optic nerve was discolored. (*Id.* at 8.) Instead of referring Plaintiff to an ophthalmic neurologist, Plaintiff claims that Dr. Patel performed "unnecessary cataract" surgery for "financial profit and gain." (*Id.*) After this surgery failed to correct his vision problems, Plaintiff asserts that Dr. Patel's partner, "Dr. Shah," referred him to an ophthalmic neurologist. (*Id.* at 8–9.) According to Plaintiff, the ophthalmic neurologist "readily found" that since 2008, Plaintiff had a "slow growing tumor" in his brain, which had grown to "massive proportions and had encompassed the optic nerves of both eyes and was strangling the optic nerves." (*Id.* at 9.) Plaintiff alleges that this brain tumor was the "mechanism which was

causing the deterioration of his eyesight." (*Id.*) Plaintiff claims that he underwent "emergency" brain surgery in August 2016. (*Id.*) According to Plaintiff, during surgery, the anesthesiologist "failed to administer the proper [medication]" and Plaintiff had a "seizure on the operating table." (*Id.*) Plaintiff alleges that he needed to complete a course of radiation after the surgery to address the remnants of his brain tumor. (*Id.*) Plaintiff claims that, since the surgery, he "experiences episodes where his head becomes extremely hot and he becomes dizzy, [nauseous,] and feels very ill." (*Id.*)

Plaintiff filed the Complaint on November 27, 2023. (ECF No. 1.) The Honorable J. Brendan Day, U.S.M.J., appointed Plaintiff *pro bono* counsel for the sole purpose of effectuating service of the Complaint. (ECF No. 15.) After the Complaint was served, the Court directed Defendants to file and serve their Motions to Dismiss by March 10, 2026. (ECF No. 39.) Upon receipt of their Motions, the Court expressly provided Plaintiff with twenty-eight days to file his opposition briefs. (*Id.*) Defendants filed a total of five Motions to Dismiss. (ECF Nos. 38, 40, 42–44.) Instead of opposing those motions, Plaintiff filed a Motion to Appoint *Pro Bono* counsel on April 1, 2026. (ECF No. 45.) Judge Day denied that Motion on July 1, 2026. (ECF No. 50.) From the time that Defendants filed their five separate Motions to Dismiss, in or around March 2026, (ECF Nos. 38, 40, 42–44), and notwithstanding the Court's explicit advisement, in writing, authorizing Plaintiff to file oppositions to same, to date, Plaintiff has failed to respond.

## II. LEGAL STANDARD

### A. RULE 12(B)(1)

Under Federal Rule of Civil Procedure ("Rule") 12(b)(1), a court must grant a motion to dismiss if it lacks subject matter jurisdiction to hear the claim. Fed. R. Civ. P. 12(b)(1). In evaluating a Rule 12(b)(1) motion to dismiss, courts must first determine whether the motion "presents a 'facial' attack or a 'factual' attack on the claim at issue, because that distinction

determines how the pleading must be reviewed." *Const. Party of Pa. v. Aichele*, 757 F.3d 347, 357–58 (3d Cir. 2014) (quoting *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012)). "A facial 12(b)(1) challenge, which attacks the complaint on its face without contesting its alleged facts, is like a 12(b)(6) motion in requiring the court to consider the allegations of the complaint as true." *Hartig Drug Co. v. Senju Pharm. Co.*, 836 F.3d 261, 268 (3d Cir. 2016) (internal quotation marks omitted).

A factual challenge, on the other hand, "attacks allegations underlying the assertion of jurisdiction in the complaint, and it allows the defendant to present competing facts." *Id*. The "trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case" and "the plaintiff will have the burden of proof that jurisdiction does in fact exist." *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 n.3 (3d Cir. 2006) (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). "Therefore, a 12(b)(1) factual challenge strips the plaintiff of the protections and factual deference provided under 12(b)(6) review." *Hartig Drug Co.*, 836 F.3d at 268.

### B. RULE 12(B)(6)

For a complaint to survive dismissal under Federal Rule of Civil Procedure ("Rule") 12(b)(6), it must contain "sufficient factual matter" to state a claim for relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *Clark v. Coupe*, 55 F.4th 167, 178 (3d Cir. 2022)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 566 U.S. at 678. When assessing the factual allegations in a complaint, courts "disregard legal conclusions and recitals of the elements of a cause of action that are supported only by mere conclusory statements." *Wilson v. USI Ins. Serv. LLC*, 57 F.4th 131, 140 (3d Cir. 2023). The court accepts all allegations in the

complaint as true and gives the plaintiff "the benefit of every favorable inference to be drawn therefrom." *Kulwicki v. Dawson*, 969 F.2d 1454, 1462 (3d Cir. 1992). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The defendant bringing a Rule 12(b)(6) motion bears the burden of "showing that a complaint fails to state a claim." *In re Plavix Mktg., Sales Pracs. & Prod. Liab. Litig. (No. II)*, 974 F.3d 228, 231–32 (3d Cir. 2020) (citing *Davis v. Wells Fargo*, 824 F.3d 333, 349 (3d Cir. 2016)).

In deciding a Rule 12(b)(6) motion, the court can only consider "the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer*, 605 F.3d at 230. A court may also consider any document "integral to or explicitly relied upon in the complaint" when ruling on a motion to dismiss. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

## III. DISCUSSION

Defendants raise various arguments for dismissal in their Motions to Dismiss, many of which overlap. The bases for dismissal most common to these Motions are categorized as follows: (1) sovereign immunity, (2) statute of limitations, (3) the *Rooker-Feldman* doctrine, (4) subject matter jurisdiction, (5) *res judicata*,[5] and (6) service of process.[6] For the reasons that follow, the Court grants Defendants' Motions and dismisses the Complaint in its entirety.

---

[5] Most of the defendants raise *res judicata* arguments in their Motions to Dismiss. The Court need not reach this argument based on the other grounds for dismissal set forth *infra*. However, the Court notes that the Superior Court of New Jersey did not dismiss with prejudice every Defendant from Plaintiff's underlying state court case. *See Chew v. State of New Jersey*, No. MER-L-000918-18 (N.J. Super. Ct.). While the Court makes no finding on this issue, Defendants fail to address how that fact may affect this Court's assessment of the elements of claim preclusion. If Plaintiff amends the Complaint to cure the deficiencies identified in this Memorandum Opinion, as the Court permits, any renewed *res judicata* arguments raised by Defendants must address this question.

[6] Because the Court dismisses the Complaint in its entirety against all Defendants on multiple grounds, it need not reach all of Defendants' arguments for dismissal, including any arguments regarding service of process.

### A. SECTION 1983 CLAIMS

#### 1. Sovereign Immunity

Any § 1983 claims brought pursuant to the United States Constitution against the State Defendants and its employees in their official capacities are barred by sovereign immunity. The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity commenced or prosecuted against any one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. This amendment "has been interpreted to render states—and, by extension, state agencies and departments and officials when the state is the real party in interest—generally immune from suit by private parties in federal court." *Pa. Fed'n of Sportsmen's Clubs, Inc. v. Hess*, 297 F.3d 310, 323 (3d Cir. 2002). "[T]he Eleventh Amendment is a jurisdictional bar which deprives federal courts of subject matter jurisdiction." *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 693 n.2 (3d Cir. 1996).

Here, Plaintiff appears to pursue Fifth, Eighth, and Fourteenth Amendment claims against the State Defendants. Plaintiff claims that the Superior Court of New Jersey, Appellate Division "refuses to follow DUE PROCESS [or] allow [him] ACCESS TO COURTS, EQUAL PROTECTION OF THE LAWS or FUNDAMENTAL FAIRNESS." (Compl. at 4.) These constitutional claims all appear to arise from the Superior Court of New Jersey's dismissal of Plaintiff's medical malpractice case. (*Id.* at 3.) The Court construes these claims as brought against Defendant the State of New Jersey, as Plaintiff does not name the New Jersey courts as a defendant.[7] The Eleventh Amendment bars any such claim against the State of New Jersey. *See*

[7] The Court notes that any claims brought under the Fifth and Fourteenth Amendments against the New Jersey courts would also be barred by Eleventh Amendment immunity. *Owens v. Armstrong*, 171 F. Supp. 3d 316, 329–30 (D.N.J. 2016) ("[T]he New Jersey Superior Court is an arm of the state entitled to share in the state's sovereign immunity." (internal quotation marks omitted)).

*Hess*, 297 F.3d at 323. Plaintiff also claims that he was made "legally blind" by the deliberate indifference of "the medical authorities at the New Jersey State Prison and other medical officials working with them." (Compl. at 3.) Any Eighth Amendment claim against Defendant the NJDOC and its employees in their official capacities is also barred by the Eleventh Amendment. *See Shepperson v. New Jersey Dep't of Corr.*, No. 19-19305, 2020 WL 57888, at *2 (D.N.J. Jan. 6, 2020) ("The New Jersey Department of Corrections is an arm of the state that is immune from suit for damages under § 1983." (citing *Fox v. Bayside State Prison*, 726 F. App'x 865, 867–68 (3d Cir. 2018))); *see also Durham v. Dep't of Corr.*, 173 F. App'x 154, 158 (3d. Cir. 2006) (finding that state corrections officers named in their official capacities were immune from suit under the Eleventh Amendment).

Moreover, no exception to Eleventh Amendment immunity applies here. There are three exceptions to Eleventh Amendment immunity: "1) congressional abrogation, 2) state waiver, and 3) suits against individual state officers for prospective relief to end an ongoing violation of federal law." *MCI Telecomm. Corp. v. Bell Atl. Pa.*, 271 F.3d 491, 503 (3d Cir. 2001). Congress did not intend to abrogate Eleventh Amendment immunity when it enacted § 1983, the statute under which Plaintiff purportedly seeks to bring his claims. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64, 67 (1989) ("We cannot conclude that § 1983 was intended to disregard the well-established immunity of a State from being sued without its consent."). There is also no indication that New Jersey has consented to Plaintiff's suit. In fact, the State Defendants expressly state in their Opposition that they do not waive any such claim. (State Defs. Mot. at 6.) Finally, Plaintiff does seek prospective relief against any state officials as redress for his purported Fifth, Eighth, and

Fourteenth Amendment claims. Accordingly, the Court dismisses Plaintiff's § 1983 claims against the State Defendants as barred by the Eleventh Amendment.[8]

2. Statute of Limitations

Any § 1983 claims against the remaining Defendants (Dr. Hitesh Patel, Dr. Samir Patel, St. Francis Medical Center, and University Hospital)[9] are barred by the statute of limitations. "Section 1983 does not create substantive rights," but rather "provides a federal cause of action for the violation of a federal right." *Dique v. New Jersey State Police*, 603 F.3d 181, 185 (3d Cir. 2010) (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)). The statute of limitations applicable to a § 1983 claim is determined by state law. *Id*. "A section 1983 claim is characterized as a personal-injury claim and thus is governed by the applicable state's statute of limitations for personal-injury claims." *Id*. (citing *Cito v. Bridgewater Twp. Police Dep't*, 892 F.2d 3, 25 (3d Cir. 1989)). Here, New Jersey state law is applicable to Plaintiff's claims. New Jersey law sets forth a two-year statute of limitations period for personal-injury torts. N.J. Stat. Ann. § 2A:14–2. "Thus, a section 1983 claim arising in New Jersey has a two-year statute of limitations." *Dique*, 603 F.3d at 185 (citing *Montgomery v. De Simone*, 159 F.3d 120, 126 n. 4 (3d Cir. 1998)). In New Jersey, a claim accrues for statute of limitations purposes when the "injured party discovers, or by exercise

---

[8] It is also the case that, for the reasons discussed in Section III.A.1, all claims, including any state law claims, raised by Plaintiff against the State Defendants are barred by Eleventh Amendment immunity.

[9] "In order to prevail in a section 1983 cause of action, a party must establish that the defendant acted under color of state law, or was a state actor." *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1147 (3d Cir. 1995). To the extent that Plaintiff claims that Defendants Dr. Hitesh Patel, Dr. Samir Patel, St. Francis Medical Center, and University Hospital are subject to liability under § 1983, the Court notes that a private medical professional or private hospital does not become a "state actor" for purposes of a § 1983 claim "simply by providing medical care to an incarcerated individual." *Melendez v. Dimico*, No. 18-674, 2018 WL 6831160, at *3 n.2 (D. Del. Dec. 28, 2018); *Mobley v. Sahota*, No. 14-644, 2014 WL 13133639, at *3 (W.D. Pa. July 16, 2014). Plaintiff alleges that a "Dr. Patel" was under contract with the NJDOC, but it is not clear whether he references either of the Dr. Patel's named in this case. Plaintiff also fails to allege how Defendants St. Francis Medical Center and University Hospital acted under color of state law. Thus, the Court dismisses Plaintiff's § 1983 claims against Defendants Dr. Hitesh Patel, Dr. Samir Patel, St. Francis Medical Center, and University Hospital on this independent ground.

of reasonable diligence and intelligence should have discovered[,] that he may have a basis for an actionable claim." *Id*. (quoting *Lopez v. Swyer*, 300 A.2d 563, 565 (N.J. 1973)).

The facts as alleged in Plaintiff's Complaint are as follows: in 2008, Plaintiff received an MRI with an anomaly that doctors with the NJDOC did not investigate further. (Compl. at 7.) In 2016, he asserts that he received unnecessary cataract surgery from "Dr. Patel" after suffering from vision problems. (*Id*. at 8.) He alleges that when this cataract surgery failed, Dr. Patel's colleague, "Dr. Shah," referred Plaintiff to an ophthalmic neurologist, who found a slow growing tumor in Plaintiff's brain that was "causing the deterioration of his eyesight." (*Id*. at 8–9.) Plaintiff alleges that he received emergency brain surgery in August 2016. (*Id*. at 9.) He claims that during the surgery, the anesthesiologist failed to administer the proper medication and Plaintiff had a seizure. (*Id*.) The primary physical injury for which Plaintiff seeks relief from Defendants is vision loss. By his own admission, Plaintiff understood the true cause of his vision loss no later than August 2016—when he underwent brain surgery due to a tumor. (*Id*. at 8.) Plaintiff did not file this federal action until November 2023 (*see* ECF No. 1), well beyond the two-year statute of limitations period applicable to his claims. Thus, the Court dismisses all § 1983 claims against the remaining Defendants (Dr. Hitesh Patel, Dr. Samir Patel,[10] St. Francis Medical Center, and University Hospital) as barred by the statute of limitations.

[10] Defendant Dr. Samir Patel also claims that he has never treated Plaintiff. (S. Patel Mot. at 4–5.) At the motion to dismiss stage, a court can only consider "the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer*, 605 F.3d at 230. The Court notes that Dr. Samir Patel makes no argument as to why the Court can consider the facts beyond the Complaint that he both identifies in his Motion to Dismiss and attaches to it. If Dr. Samir Patel raises this argument again in a later Motion under Rule 12, he must address this concern.

### B. SUBJECT MATTER JURISDICTION

The only remaining causes of action are those that sound in state law (purportedly medical malpractice and negligence). Because the Court has dismissed Plaintiff's federal claims and diversity jurisdiction is absent,[11] the sole basis on which this Court can exercise jurisdiction over the remaining state law claims is through supplemental jurisdiction. The Court declines to do so. *See* 28 U.S.C. § 1367(c)(3) ("[D]istrict courts may decline to exercise supplemental jurisdiction over a claim . . . [if] the district court has dismissed all claims over which it has original jurisdiction."). "Indeed, it is well-established that a federal court normally will not exercise supplemental jurisdiction over state law claims after it has dismissed the claims upon which federal jurisdiction was premised." *Manco v. Univ. of the Sciences-Philadelphia*, No. 04-6002, 2005 WL 1828547, at *9 (D.N.J. July 29, 2005); *see also Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988); *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000). Therefore, the Court dismisses Plaintiff's state law claims against all Defendants.[12]

### C. *ROOKER-FELDMAN* DOCTRINE

In the alternative, the Court finds that all of Plaintiff's claims against all Defendants are barred by the *Rooker-Feldman* doctrine. The *Rooker-Feldman* doctrine bars federal district courts

---

[11] Despite the requirement to do so, Plaintiff makes no allegation regarding the Court's jurisdiction over his case. *See Martin v. Aurora Fin. Grp., Inc.*, No. 24-04210, 2024 WL 1485461, at *2 (D.N.J. Apr. 5, 2024) ("Plaintiffs must adequately allege a basis for federal jurisdiction contained in a 'short and plain statement of the grounds for the court's jurisdiction' in the Complaint." (quoting Fed. R. Civ. P. 8(a)(1))). However, upon the Court's review of the Complaint and the parties' submissions, it appears that Plaintiff and most Defendants in this action are citizens of New Jersey. Therefore, under 28 U.S.C. § 1332, Plaintiff cannot establish that the parties are citizens of different states such that the Court can exercise diversity jurisdiction over this matter.

[12] The Court agrees with Defendant University Hospital that Plaintiff makes no mention of it in the Complaint. (Univ. Hospital Mot. at 5.) Plaintiff has failed to state a claim against this defendant under Rule 12(b)(6), and the Court dismisses all claims against Defendant University Hospital on these alternative grounds. *See D.T.B. ex rel. O'Callaghan*, 280 F. App'x 151, 154 (3d Cir. 2008) (affirming the District Court's dismissal of claims against a particular defendant because "he was not mentioned anywhere in the complaint").

from engaging in "appellate review of state-court orders." *Merritts v. Richards*, 62 F.4th 764, 774 (3d Cir. 2023) (citing *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 644 n.3 (2002)). The doctrine has four preconditions—two procedural and two substantive—which, when all satisfied, require dismissal. *See id.* (citations omitted). The four requirements are: "(1) the federal plaintiff lost in state court; (2) the plaintiff complains of injuries caused by the state-court judgments; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments." *Vuyanich v. Smithton Borough*, 5 F.4th 379, 385 (3d Cir. 2021) (quoting *Great W. Mining & Min. Co. v. Fox Rothschild LLP*, 615 F.3d 159, 166 (3d Cir. 2010)) (internal quotation marks omitted).

All four requirements are met here. First, Plaintiff acknowledges in the Complaint that his case before the state "TRIAL COURT" was "dismissed with prejudice" and that the "NJ Appellate Court" dismissed his case "without review" on October 17, 2023. (Compl. at 3–4.) Second, Plaintiff complains of injuries caused by these dismissals in the state court. He claims that "[t]he State courts are corrupt and WILL NEVER rule against ANY State Actor and would rather have [him] suffer and be blind with NO RESPITE OR RESTITUTION than admit that State Actors are responsible for harming [him]." (*Id.* at 4.) He also alleges that the "NJ Appellate Court" was "extremely HOSTILE to [his] rights" and "used many underhanded tactics to waste [his] time and energy and discourage [him] from pursuing the case" in violation of his due process rights, rights to access the courts, and his right to equal protection of the law. (*Id.*) Third, the alleged state-court judgments at issue occurred before Plaintiff filed this federal case. His tort action in the Superior Court of New Jersey, Mercer County was dismissed with prejudice on August 12, 2022, *see Chew*, No. MER-L-000918-18, and his appeal was dismissed on October 17, 2023, (Compl. at 4). Plaintiff filed this federal action on November 27, 2023. (ECF No. 1.) Fourth, Plaintiff explicitly seeks this

Court's review of his state-court judgments, inviting the rejection of those judgments based on their alleged lack of fairness. He alleges that his attorney was bribed to lose the case at the trial court level and that the Appellate Court used "underhanded tactics" to discourage his pursuit of appeal. (Compl. at 4.) He states that he "SEEK[S] FAIR REVIEW FROM THE FEDERAL DISTRICT COURT" after his underlying case and appeal were improperly dismissed. (*Id*. at 3.) He asserts that his "only hope to prosecute" his state case "with any fairness is to move it to the Federal District Court." (*Id*. at 4.)

Having found the four prongs satisfied, the Court concludes that the *Rooker-Feldman* doctrine prevents this Court from exercising jurisdiction over Plaintiffs' claims as they seek to review, modify, or void Plaintiff's state court rulings. *See In re Knapper*, 407 F.3d 573, 580 (3d Cir. 2005).

## CONCLUSION

For the foregoing reasons, Defendants' Motions, (ECF Nos. 38, 40, 42–44), are **GRANTED**. The Complaint is **DISMISSED** without prejudice in its entirety.

An appropriate Order will accompany this Memorandum Opinion.

Dated: September 18, 2026

**ROBERT KIRSCH**
**UNITED STATES DISTRICT JUDGE**